**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

SAFECO INSURANCE COMPANY
OF AMERICA,

                Plaintiff,

v.                              CIVIL ACTION NO. 2:10-cv-01301

MOUNTAINEER GRADING CO., et al.,

                Defendants.

**MEMORANDUM OPINION & ORDER**

Pending before the court are the plaintiff Safeco Insurance Company of America's ("Safeco") Motion for Summary Judgment as to Counterclaim [Docket 26] and Motion for Summary Judgment as to Counts I-IV of the Complaint [Docket 32]. For the reasons discussed below, the plaintiff's Motion for Summary Judgment as to Counterclaim is **GRANTED**. The plaintiff's Motion for Summary Judgment as to Counts I-IV of the Complaint is **GRANTED in part** as to Count I for Mountaineer Grading Co., Inc. and MG Management, Inc. and **DENIED in part** as to Counts II-IV for Mountaineer Grading Co., Inc. and MG Management, Inc. The plaintiff's Motion for Summary Judgment as to Counts I-IV against Ms. Putillion is **DENIED**.

**I.**     **Background**

        A.    *Facts*

This case arises out of a General Agreement of Indemnity for Contractors (the "Indemnity Agreement") and a subsequent Letter Agreement. The defendant Mountaineer Grading Co., Inc. ("Mountaineer") was the general contractor on several public construction

contracts performed in West Virginia.  (Mem. Supp. Mot. Summ. J. on Counts I-IV [Docket 33], at 3.)  Safeco "issued numerous payment and performance bonds on behalf of" Mountaineer, the issuance of which was induced by the Indemnity Agreement.  (*Id.*)  The parties do not dispute that the Indemnity Agreement was signed by Mountaineer, MG Management, Inc. ("MGM"), and Leslie L. Putillion ("Mr. Putillion").  (Gen. Agreement Indem. Contractors [Docket 32-1], at 3.)  There is also a signature on the agreement purporting to be that of Theresa G. Putillion ("Ms. Putillion"), but Ms. Putillion denies that she signed the agreement.  (Answer [Docket 9], at ¶ 5).

1.     *The Indemnity Agreement*

The Indemnity Agreement at issue holds its signatories jointly and severally liable for "all loss, costs and expenses of whatever kind and nature, including court costs, [and] reasonable attorneys' fees" incurred by Safeco if Mountaineer defaulted on a bonded project.  (General Agreement Indemify Contractors [Docket 32-1], at 1.)  Specifically, the Indemnity Agreement provided that if Mountaineer defaulted, Safeco could "[t]ake possession of the work under any and all Contracts and [] arrange for its completion by others or by the obligee of any bond."  (*Id.*)  The signatories are then required to reimburse Safeco for expenses incurred because of the default.  (*Id.*)  The signatories also agreed in the Indemnity Agreement to deposit collateral security with Safeco.  (*Id.* at 2.)

2.     *The Letter Agreement*

Pursuant to the Indemnity Agreement, Safeco issued payment and performance bonds for Mountaineer's public construction contracts.  (Mem. Supp. Summ. J. on Counts I-IV [Docket 33], at 3.)   Subsequently, Mountaineer began having financial problems and, by 2010, Mountaineer "could no longer continue its operations without financial assistance from Safeco."

- 2 -

(Mem. Supp. Mot. Summ. J. on Countercl. [Docket 26], at 3.)   As a result of Mountaineer's financial difficulties, Safeco and Mountaineer began to negotiate a comprehensive financial arrangement to provide Mountaineer with funds to continue work on its construction projects. (*Id*.)   Because Mountaineer needed immediate financing to continue its projects, Safeco, Mountaineer, Mr. Putillion, and MGM entered into the Letter Agreement, which was intended to provide the necessary temporary financing.  (*Id*. at 3-4.)

In the Letter Agreement, Safeco agreed to advance Mountaineer "$500,000 in the aggregate in order to meet payroll on the Bonded Projects (the 'Payroll Advance')" within thirty days.  (Letter Agreement [Docket 26-5], at 2.)  The agreement specified that the Payroll Advance was to be used only "to pay the wages, state and federal withholding taxes, fringe benefits and other standard payroll deductions for the employees working directly on the Bonded Projects." (*Id*.)   The Letter Agreement also stated that the signatories would be liable as outlined in the Indemnity Agreement for the funds Safeco provided in the form of the Payroll Advance.  (*Id*. at 3.)   Additionally, the signatories agreed to provide Safeco with a promissory note for the repayment of the Payroll Advance and to provide Safeco with collateral to "secure payment of the Promissory Note."  (*Id*.)  The Letter Agreement also stated that Safeco had "sole discretion as to whether to advance funds beyond the Payroll Advance in order to finance Principal and its continued operations to complete one or more of the Bonded Projects."  (*Id*. at 5.)

Safeco and the defendants were unable to reach a comprehensive financing agreement. (Mem. Supp. Summ. J. [Docket 26], at 5.)  Subsequently, Safeco claims that it "determined it would comply with its performance bond obligations by entering into Takeover Agreements with the various project owners and obtaining bids from potential completion contractors."   (*Id*.)

According to Safeco, Mountaineer's default forced it to "expend[] substantial amounts to complete the various projects utilizing completion contractors." (*Id*. at 6.)  Additionally, Safeco claims that it was required to pay "a substantial number of payment bond claims." (*Id*.)

    B.    *Procedural History*

The plaintiff instituted the instant action on November 15, 2010.  The Complaint asserted that (1) Safeco was entitled to indemnification from the defendants pursuant to the Indemnification Agreement, (2) that it was entitled to indemnification under the common law, (3) it was entitled to specific performance, (4) it was entitled to funds under the doctrine of *quia timet*, and (5) it was entitled to a preliminary and permanent injunction under the collateral security provisions of the Indemnity Agreement.  (Compl. [Docket 1], at 5-10.)

On December 23, 2010, the defendants filed their Answer, which contained a counterclaim against the plaintiff.  In their counterclaim, the defendants assert that Safeco failed to pay Huntington National Bank, and "federal and state withholding obligations," and "failed and refused to pay for maintenance or repairs on construction equipment employed to its benefit[] in the completion of bonded projects directly and proximately resulting in significant financial loss to the Defendants."  (Ans. [Docket 9], at ¶¶ 5, 8-9.)  Additionally, the defendants claim that Safeco failed to mitigate its losses and took "affirmative actions to increase the amount of the potential loss on the completion of bonded projects thereby increasing the potential indemnity claim." (*Id*. ¶¶ 10-11.)

The plaintiff filed its Motion for Summary Judgment as to Counterclaim [Docket 26] on July 28, 2011.  The plaintiff also filed a Motion for Summary Judgment as to Counts I-IV of the Complaint on November 11, 2011.  Both Motions are now ripe for review.

On December 9, 2011, the defendant Mr. Putillion filed a Suggestion of Bankruptcy [Docket 37].  Pursuant to 11 U.S.C. § 362, the proceeding was automatically stayed.  (Ord. [Docket 39]).  However, the court determined that the automatic stay did not extend to the defendants Mountaineer, MGM, and Ms. Putillion.  (Ord. [Docket 43]).

## II.    Summary Judgment Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor."  *Anderson*, 477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion.  *See Felty v. Graves-Humphreys Co.*, 818

F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### III.    Analysis of the Plaintiff's Motion for Summary Judgment as to Counterclaims

   A.    *Breach of Contract Claims*

The defendants' counterclaim alleges that Safeco breached an obligation to pay Huntington National Bank certain amounts that Mountaineer was required to pay.  (Answer [Docket 9], at ¶ 5.)  The defendants also allege that Safeco failed to pay certain federal and state withholding taxes owed by Mountaineer and that it failed to pay for the maintenance and repair of Mountaineer's equipment.  (*Id.* ¶¶ 8-9.)

In response, Safeco asserts that under the Letter Agreement, Safeco was only obligated to pay $500,000 to Mountaineer in the form of a Payroll Advance.  (Mem. Supp. Mot. Summ. J. as to Countercl. [Docket 26], at 4.)  Safeco claims that it fulfilled its obligation under the Letter Agreement by advancing Mountaineer $500,000.  Moreover, Safeco claims that the Letter Agreement only obligated it to pay the $500,000, and it was left to the discretion of the parties whether to execute a comprehensive financing agreement.  (*Id.* at 4-5.)

To establish a breach of contract claim under West Virginia law, a plaintiff must prove the following elements by a preponderance of the evidence:  (1) the existence of a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result.  *See Exec. Risk, Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D. W. Va. 2009).  A fundamental rule of contract law is that a "court in deciding disputes about the meaning of a contract . . . will endeavor to carry into effect the intent

of the parties to the agreement." *Bennett v. Dove*, 166 W. Va. 772, 774 (1981).  Courts are not "to alter, pervert, or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract."  *Id*.  To respect the parties' intent, courts should give the words in a contract their ordinary meaning.  *Id*.  An agreement expressing the parties' intentions in "plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."  *Id*. (quoting *Cotiga Dev. Co. v. United Fuel Gas Co*., 147 W. Va. 484 (1962)).

In this case, the parties' Letter Agreement clearly outlines the obligations of each party. Under the agreement, Safeco was required to advance Mountaineer $500,000 over thirty days as a Payroll Advance.  (Letter Agreement [Docket 26-5], at 2.)  Additionally, the Letter Agreement provides that Safeco "shall have sole discretion as to whether to advance funds beyond the Payroll Advance in order to finance" Mountaineer in "its continued operations to complete one or more of the Bonded Projects."  (*Id*. at 5.)  Thus, the Letter Agreement obligated Safeco to advance Mountaineer $500,000 as a Payroll Advance and it did not impose any further financial obligations on Safeco.[1]

The parties do not dispute that Safeco provided Mountaineer with the $500,000 Payroll Advance required by the Letter Agreement.  (Resp. of Corporate Def. & Leslie Putillion Opp'n Pl.'s Mot. Summ. J. [Docket 35], at 2 ("Safeco did in fact advance money necessary to meet payroll and did finance job costs incurred by [Mountaineer] in its continued performance."))  This payroll advance was Safeco's only financial obligation under the Letter Agreement.  Safeco was not required to provide Mountaineer with any additional funds.  Additionally, the Letter

Agreement did not obligate Safeco to pay any of Mountaineer's other creditors, including Huntington National Bank.  (Letter Agreement [Docket 26-5], at 5 ("Surety shall have sole discretion as to whether to advance funds beyond the Payroll Advance in order to finance Principal and its continued operations . . . .")) Thus, the court **FINDS** that there is no genuine issue of material fact regarding whether Safeco fulfilled its obligations under the Letter Agreement.  The court also **FINDS** based on the plain language of the Letter Agreement that Safeco did not breach its duties under that contract.    Accordingly, the court **GRANTS** the plaintiff's Motion for Summary Judgment as the defendants' counterclaim for breach of the Letter Agreement.

> B.   *Defendants' Claim that Safeco Breached the Covenant of Good Faith and Fair Dealing*

The defendants allege that Safeco breached its duty of good faith and fair dealing.[2]  (Ans. [Docket 9], at ¶¶ 8-11.)  Specifically, the defendants claim that Safeco acted in bad faith when it refused to pay the costs of maintaining Mountaineer's equipment, when it allegedly failed to mitigate its damages, and when it refused to pay federal and state withholding taxes on wages owed by Mountaineer.  (*Id*.)  The defendants allege that those costs were job costs and, under a performance bond, "all costs related to any job that's bonded were supposed to be paid."  (Leslie Putillion Dep. [Docket 35-1], at 81-82.)   In response, Safeco argues that the defendants have failed to offer any evidence that Safeco breached any agreement.  (Reply to Defs.' Resp. to Pl.'s

---

[1]        The Letter Agreement also required Safeco to investigate whether to provide funds to HD Supply Company.  (Letter Agreement, [Docket 26-5], at 2-3.)  The Agreement provides that Safeco will determine whether to provide the additional funds after its investigation.  *Id*.

[2]        The defendants' counterclaim does not specifically assert that Safeco breached the duty of good faith and fair dealing inherent in every contract.  However, the defendants claim throughout their counterclaim that the plaintiff acted in "bad faith" and do not specify whether this is a claim for breach of the covenant of good faith and

Mot. Summ. J. [Docket 38], at 2.)  Safeco also claims that the defendants have failed to show that any actions of Safeco were conducted in bad faith.  (*Id.* at 3.)

The relationship between parties to a contract is governed not only by the agreement itself, but also by "extra-contractual" duties imposed on the parties by operation of statutes and the common law.  Specifically, "West Virginia recognizes the rule that 'in every contract there exists an implied covenant of good faith and fair dealing.'"  *Knapp v. Am. Gen. Fin. Inc.*, 111 F. Supp. 2d 758, 767 (S.D. W. Va. 2000) (quoting *Harless v. First Nat'l Bank in Fairmont*, 162 W. Va. 116 (1978)).  The Supreme Court of Appeals of West Virginia ("SCAWV") has found that a duty of good faith exists in the context of a surety-bond contract.  *Fidelity & Cas. Co. of N.Y. v. McNamara*, 127 W. Va. 731, 735-36 (1945).[3]

This duty does not exist in a vacuum and "[q]uestions of good-faith performance thus necessarily are related to the application of the terms of the contractual agreement."  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 217 n.11 (1985).  Moreover, a claim that a party to a contract breached this duty is not a stand-alone cause of action under West Virginia law. *Highmark W. Va. v. Jamie*, 221 W. Va. 487, 493 (2007) ("[A]n implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim.").

In this case, as discussed above, no evidence has been presented that Safeco breached its obligations under the Letter Agreement or the performance bonds.  Safeco's only financial obligation under the Letter Agreement was to provide Mountaineer with a $500,000 Payroll Advance, and Safeco fulfilled this obligation.  Additionally, the corporate defendants have failed

---

fair dealing or for tortious bad faith.  Thus, the court will construe the defendants' "bad faith" allegations as claims for breach of the covenant of good faith and fair dealing and for tortious bad faith.

to provide anything beyond bare assertions that Safeco was obligated under either the performance bonds or the Letter Agreement to provide additional funds and that Safeco breached these obligations. Because West Virginia law does not provide a stand-alone claim for breach of the duty of good faith and Safeco did not breach its contractual obligations, the defendants do not have a cause of action for breach of the duty of good faith. Accordingly, the court **GRANTS** the plaintiff's Motion for Summary Judgment as to the Counterclaim for breach of the duty of good faith.

C.    *Tortious Bad Faith Claim*

The defendants also claim that Safeco's actions in refusing to pay Huntington unless it agreed "to subordinate its security interests to Safeco's potential indemnity claim," refusing to pay for repairs to equipment, refusing to pay withholding obligations, and taking affirmative acts to increase the costs of the projects constituted bad faith. (Ans. [Docket 9], at ¶¶ 5-11.)

West Virginia courts have not addressed whether a principal has a separate cause of action for bad faith in the context of a surety-bond contract. However, courts in other states have recognized such a cause of action. *Moundsville Water Bd. v. Shook, Inc. Heavy & Envtl. Div. Liberty Mut. Ins. Co.*, No. 5:09-cv-113, 2010 WL 2571228, at *6 (N.D. W. Va. June 22, 2010) (noting that other courts have allowed such claims). Courts recognizing such a tort reason that a surety-bond contract is akin to an insurance contract, and an insured in the insurance contract possesses a cause of action for tortious bad faith against an insurance company. *Id*. Other courts have refused to recognize a cause of action for tortious bad faith. *Id*. at 7. These courts distinguish general insurance contracts from suretyship contracts. *Id.* They argue that suretyship

---

3       The Supreme Court of Appeals of West Virginia has also stated that "[w]here a party is given full express indemnification, it is obliged to exercise a degree of good faith to its indemnitor." *Riggle v. Allied Chem. Corp.*, 180

contracts are not insurance contracts, so a cause of action available in the context of an insurance contract is not necessarily available in the context of a surety-bond contract.  *Id.*

This court will not address whether a principal has a cause of action for tortious bad faith against a surety in West Virginia because the defendants have not created a genuine issue of material fact as to whether the plaintiff acted in bad faith.  As explained above, Safeco did not breach its duty of good faith and fair dealing or fail to fulfill its obligations under the Letter Agreement.  Additionally, the defendants have not provided evidence that creates a genuine issue of material fact as to whether Safeco was obligated to cover additional expenses under other agreements.  Thus, the defendants have not created a genuine issue of material fact as to whether Safeco acted in bad faith.  Accordingly, the court **GRANTS** the plaintiff's Motion for Summary Judgment as to Counterclaim for the defendants' bad faith claims.

## IV.    Plaintiff's Motion for Summary Judgment on Counts I-IV of Complaint Against Corporate Defendants

### A.    *Contractual Obligation Claim*

The plaintiff has brought a claim against the defendants asserting that they are contractually obligated under the Indemnity Agreement to indemnify Safeco for costs and expenses incurred after Mountaineer defaulted.   (Compl. [Docket 1], at ¶¶ 24-27.)   Safeco's contractual indemnification claim is based on its assertion that the defendants agreed in the Indemnity Agreement to reimburse Safeco for its "losses, expenses, consulting fees and attorney fees by reason of having executed the Bonds naming Mountaineer as Principal."  (*Id*. ¶ 25.)

In response, Mountaineer and MGM (the "corporate defendants") have argued that there is a genuine issue of material fact as to whether "Safeco acted in a reasonable, good faith

manner" when it completed the bonded projects.  (Resp. Corporate Defs. & Mr. Putillion to Pl.'s Mot. Summ. J. [Docket 35], at 3.)  The corporate defendants advance the argument that "[m]ost jurisdictions have held that a surety is entitled to indemnification only for payments made in good faith."  (*Id.* at 4.)  At minimum, they argue that the plaintiff failed to "adequately mitigate" its losses and "the potential liability attributable to indemnitors as a result of" the defaults.  (*Id.*)

Under the express terms of the Indemnity Agreement, an indemnity obligation clearly exists.  Specifically, the Indemnity Agreement provides that the signatories will indemnify Safeco for:

> All loss, costs, and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees, . . . consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned, or by reason of the refusal to execute any Bond.

(Gen. Agreement of Indemnity for Contractors [Docket 1-1], at Ex. A, p.1.)  The parties do not dispute that the corporate defendants signed the Indemnity Agreement through the signature of their representative, Mr. Putillion.  The plain language of the Indemnity Agreement creates an obligation on the part of the corporate defendants to indemnify Safeco.  Thus, the corporate defendants are bound under the Indemnity Agreement to indemnify Safeco for the expenses and costs that it incurred because Mountaineer defaulted on its obligations.

1.     *Defense of Bad Faith*

The corporate defendants claim that they are not liable for Safeco's costs because Safeco acted unreasonably and a "surety is entitled to indemnification only for payments made in good faith."  (Resp. Corporate Defs.' & Leslie Putillion Opp'n Pl.'s Mot. Summ. J. [Docket 35], at 2.)  The corporate defendants argue that Safeco acted unreasonably and thus in bad faith when it

- 12 -

refused to pay Huntington National Bank ("Huntington"), a creditor of Mountaineer.  (*Id*. at 4.) They allege that Safeco unreasonably refused to pay amounts that Mountaineer owed to Huntington; a refusal which resulted in Huntington foreclosing on Mountaineer's business assets and equipment.  (Answer [Docket 9], at ¶ 6.)  The corporate defendants claim that Safeco could have incurred fewer losses and expenses under the bonds if Safeco had paid Huntington and Mountaineer's other creditors, which the corporate defendants believe would have allowed Mountaineer to continue to work on the projects.

Other courts have found that bad faith is a defense available to a principal when a surety seeks indemnification from the principal under the indemnification agreement.  *See, e.g.*, *Fid. & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc*., 722 F.2d 1160, 1163-64 (4th Cir. 1983); *Engbrock v. Fed. Ins. Co.*, 370 F.2d 784, 786 (5th Cir. 1967) ("In the face of these provisions, an indemnitor may successfully attack payments made by Surety only by pleading and proving fraud or lack of good faith by Surety."); *Frontier Ins. Co. v. Int'l Inc.*, 124 F. Supp. 2d 1211, 1214 (N.D. Ala. 2000).  Lack of good faith in the suretyship context "carries an implication of a dishonest purpose, a conscious doing of wrong, a breach of a duty through motives of self-interest or ill will."  *Frontier*, 124 F. Supp. 2d at 1214 (quoting *Elmore v. Morrison Assurance Co.*, 502 So.2d 378, 380 n.1 (Ala. 1987)).  In the context of summary judgment on a surety's indemnification claims, courts have found that "conclusory allegations of bad faith are insufficient to defeat a motion for summary judgment in favor of a surety to enforce an indemnification agreement."  *Id*. (quoting *Gen. Accident Ins. Co. of Am. v. Merritt-Meridian Const. Corp.*, 975 F. Supp. 511, 518 (S.D.N.Y. 1997).

Although this issue has not been specifically addressed by West Virginia courts, outside of the suretyship context, West Virginia recognizes that an indemnitor is only liable to the indemnitee for a settlement if the settlement was reasonable. *See Valloric v. Davo Corp.*, 178 W. Va. 14, 20-21 (1987). The reasonableness of a settlement is determined by considering "the amount paid in settlement of the claim in light of the risk of exposure." *Id.* at 21.

In this case, Safeco did not act unreasonably or in bad faith in its actions regarding Mountaineer's bonds. The defendants have not presented evidence to support their bare allegations that Safeco acted in bad faith. All of Safeco's actions were expressly authorized by the Indemnity Agreement and the Letter Agreement. Specifically, the Letter Agreement provided that Mountaineer would execute "undated Voluntary Letters of Default to Surety" and provide those Letters to Safeco. (Letter Agreement [Docket 1-1], at 13.) Safeco could deliver those letters of default to the obligees at its discretion. (*Id.*) The Indemnity Agreement stated that if Mountaineer defaulted on any of its bonded projects, Safeco had the right to "[t]ake possession of the work under any and all Contracts and to arrange for its completion by others or by the Obligee of any bond." (General Agreement Indemnify Contractors [Docket 1-1], at 2.) Moreover, the Letter Agreement provided that it was entirely within Safeco's discretion whether to provide additional funds to Mountaineer beyond the $500,000 Payroll Advance. (Letter Agreement [Docket 1-1], at 13.) As a result of Mountaineer's default,[4] Safeco was reasonable in pursuing completion of the bonded projects.

---

[4]     Mountaineer was in default as defined by the Indemnity Agreement. Default occurs under the Indemnity Agreement in the event that Mountaineer "Breaches, fails to perform, or comply with, any provision of this agreement." (General Agreement Indemnify Contractors [Docket 1-1], at 2.) The Indemnity Agreement also requires its signatories to provide, upon Safeco's request, "an amount sufficient to discharge any claim made against Surety," which could be held by Safeco as "collateral security against loss on any Bond." (*Id.*) The parties do not dispute that Safeco demanded collateral security from the signatories and that the signatories failed to provide it. Additionally, the parties do not dispute that Mountaineer failed to complete the construction projects.

2.      *Failure to Mitigate*

The defendants also allege that Safeco failed to mitigate the damages resulting from Mountaineer's default.  West Virginia recognizes the general rule that a party injured by the breach of a contract has a duty to mitigate its damages.  *Cont'l Realty Corp. v. Andrew J. Crevolin Co.*, 380 F. Supp. 246, 255 (D. W. Va. 1974).  "Mitigation of damages is an affirmative defense, and its burden is entirely on the contract breaker."  *Martin v. Bd. of Ed. of Lincoln Cnty.*, 120 W. Va. 621, 621 (1938).  This duty, also termed the doctrine of avoidable consequences, "imposes upon a party injured by another's breach of contract or tort the active duty of using all ordinary care and making all reasonable exertions to render the injury as light as possible."  *Griffith v. Blackwater Boom & Lumber Co.*, 48 S.E. 442, 450 (W. Va. 1904).

The "duty" to mitigate is limited in scope because "an injured party is responsible for doing only those things which can be accomplished at a reasonable expense and by reasonable efforts."  *Middle-West Concrete Forming & Equip. Co. v. Gen. Ins. Co.*, 165 W. Va. 280, 288 (1980).  The *Restatement (Second) of Contracts* provides that "damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation."  *Restatement (Second) of Contracts* § 350 (1981).  However, this rule does not preclude an injured party's recovery "to the extent that he has made reasonable but unsuccessful efforts to avoid loss."  *Id*.  The duty to mitigate is properly characterized as a limitation on damages and simply prevents a plaintiff from recovering damages that could reasonably have been prevented without incurring additional cost, risk, or burden.

In this case, Safeco did not fail to mitigate the damages resulting from Mountaineer's default.  Specifically, Safeco fulfilled its obligations under the Letter Agreement by advancing

- 15 -

Mountaineer $500,000 for the Payroll Advance.  Safeco was not obligated to pay Huntington National Bank or any of Mountaineer's other creditors.  Any payments to Huntington National Bank would have imposed additional costs and risks on Safeco, and plaintiff is not required to incur additional costs and risks as part of its duty to mitigate damages.  *See Kanawha-Gauley Coal & Coke Co. v. Pittston*, No. 2:09-cv-1278, 2011 WL 3022239, at *14 (S.D. W. Va. July 22, 2011).  Thus, the court **FINDS** that Safeco did not fail to mitigate its damages.

The court **FINDS** that there is no genuine issue of material fact regarding any payments made or damages sustained by Safeco in its claims against the corporate defendants.  The court also **FINDS** that Safeco did not fail to mitigate the damages sustained by Mountaineer's default.  Accordingly, the court **GRANTS** the plaintiff's Motion for Summary Judgment as to Count I of the Complaint against the corporate defendants.

B.    *Common Law Indemnification Claim*

The plaintiff also claims in Count II of its Complaint that it is entitled to indemnification from the defendants under the common law.  Generally, the common law provides that a surety is entitled to indemnification from the principal for amounts paid pursuant to a bond.  *See Perkins v. Hall*, 123 W. Va. 707, 17 S.E.2d 795, 801 (W. Va. 1941); RICHARD A. LORD, WILLISTON ON CONTRACTS § 61:59 (4th ed. 2011).  However, a surety may rely on this implicit indemnification obligation only when there is no express indemnification contract.  *Fidelity & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983); 18 MICHIE'S JURISPRUDENCE OF VIRGINIA AND WEST VIRGINIA, SURETYSHIP § 30 (1996).

In this case, the corporate defendants expressly agreed to indemnify Safeco for costs and expenses incurred if Mountaineer defaulted on its obligations in the Indemnity Agreement.

- 16 -

Safeco may not rely on the common law rule that a surety is entitled to indemnification from the principal on the bond because an express agreement exists. Thus, the plaintiff's Motion for Summary Judgment on Count II of the Complaint is **DENIED**.

      C.     *Claim for Specific Performance of Collateral Security Provision*

      The plaintiff has also brought a claim for specific performance of the collateral security provision in the Indemnity Agreement. (Compl. [Docket 1], at ¶¶ 33-38.) In this provision of the Indemnity Agreement, the parties who signed the Indemnity Agreement agreed that the signatories would pay Safeco upon demand:

> An amount sufficient to discharge any claim made against Surety on any bond . . . . This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond. The Undersigned acknowledge that their failure to pay, immediately on demand, that sum demanded by the Surety will cause irreparable harm for such Surety has no adequate remedy at law. The Undersigned confirm and acknowledge that Surety is entitled to injunctive relief for specific enforcement of the foregoing provision.

(General Agreement Idemnify Contractors [Docket 32-1], at 1.) The plaintiff claims that it demanded collateral security from the defendants pursuant to this provision to cover the "anticipated . . . minimum amount of" costs it could incur under the bond. (Compl. [Docket 1], at ¶¶ 34-35.)

      As an initial matter, although the plaintiff pled its request for specific performance as a separate count, specific performance is not an independent cause of action. *See Windstar Holdings LLC v. Range Res. Corp.*, No. 1:10-cv-204, 2011 WL 2709849, at *3 (N.D. W. Va. July 12, 2011). Specific performance is a contract remedy that is available to a plaintiff if the plaintiff establishes a valid contract has been breached by the defendants. *Id.*

- 17 -

It is a well-established principle of law that specific performance "is not a matter of right in either party, but rests in the sound discretion of the court, to be determined from all the facts and circumstances of the case." *Brand v. Lowther*, 168 W. Va. 726, 731 (1981). "Specific performance is 'an extraordinary act of grace on the part of the court, to be granted only where the plaintiff makes out his case fully, and there is not only no actual fraud or mistake, but there is no hardship or oppression, even though these do not amount to legal or equitable wrong.'" *Id*. The party seeking specific performance must establish that it is entitled to specific performance by a clear preponderance of the evidence. *Id*. Importantly, a party is not entitled to specific performance if there is an adequate remedy at law. *Mann v. Golub*, 182 W. Va. 523, 526 n.11 (1989).

In this case, Safeco is the party seeking specific performance of the contract, and thus it bears the burden of establishing that it is entitled to specific performance by a preponderance of the evidence. *See Brand*, 168 W. Va. at 731. However, Safeco has failed to offer any evidence demonstrating why its remedies at law are inadequate. The plaintiff only asserts that the defendants failed to perform under the collateral security provision of the contract, and it is entitled to specific performance. Thus, the court **FINDS** that Safeco failed to demonstrate by a preponderance of the evidence that it is entitled to specific performance. Accordingly, the plaintiff's Motion for Summary Judgment as to Count III of the Complaint is **DENIED**.

D.     *Claim for Common Law* Quia Timet

The plaintiff also claims that it is entitled to "funds from its principal" Mountaineer "sufficient to protect" Safeco from "anticipated future injury and losses." (Compl. [Docket 1], at ¶ 41.) The plaintiff asserts that it is entitled to such funds under the common law doctrine of

*quia timet* because it "anticipates and fears future injury and losses as a result of the issuance" of the performance bonds to the defendants.  (*Id*. ¶ 40.)  The plaintiff claims that it demanded that the signatories of the Indemnity Agreement deposit collateral security valued at $4,799,228.38 with Safeco on November 10, 2010, to cover anticipated losses.  (Aff. David Pikulin [Docket 32-2], at ¶ 4.)

*Quia timet* is a common law doctrine that allows a surety to require that a principal pay a creditor the amount the principal owes, which spares the surety from having to pay the debt from its own funds.  *Neal v. Buffington*, 42 W. Va. 327, 26 S.E. 172, 173 (W. Va. 1896).  *Quia timet* entitles a surety "to demand that the principal place the surety 'in funds' when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor."  *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 934 F.2d 30, 32 (2d Cir. 1991).  Historically, a "bill *quia timet* [was] a bill in equity to protect a party against the occurrence of some future injury which he fears he may suffer, and which he cannot avoid by a present action at law."  Jay M. Mann & Curtis A. Jennings, *Quia Timet:  A Remedy for the Fearful Surety*, 20 FORUM 685, 686 (1985).  *Quia timet* is a remedy available to a surety who anticipates that he will become liable for a debt.  *Borey*, 934 F.2d at 33.  However, a surety's right to *quia timet* is moot once the surety or someone on behalf of the surety makes the payment.  *Wingsco Energy One v. Vanguard Grps. Res.*, No. H-86-452, 1989 WL 223756, at *3 (S.D. Tex. 1989); *see also Buskirk v. King*, 72 F. 22, 22 (4th Cir. 1896) ("Like bills of *quia timet*, injunctions in such cases are in the nature of writs of prevention, intended to accomplish the ends of precautionary justice.").

In this case, Safeco's right of *quia timet* is moot because it is a writ of prevention and Safeco has already made the payments.  Safeco presented evidence to the court in which it asserts that it incurred $19,238,227.97 in losses as of November 1, 2011, arising from the performance bonds issued to Mountaineer.  (Aff. David J. Pikulin [Docket 32-2], at 2.)  Safeco also presented evidence that it has recovered $8,987,891.57 from contract balances, resulting in a total loss of $10,250,336.40 for Safeco.  (*Id*.)  Safeco provides a detailed record of its payments on each of the bonds issued to Mountaineer, including the payee, check number, amount, and date of payment.  (*Id*. at 4-23.)  However, Safeco has not submitted evidence of payments that it anticipates will come due arising out of the Mountaineer bonds.  Accordingly, Safeco's Motion for Summary Judgment as to Count IV is **DENIED**.

## V.     Analysis of Claims Against Ms. Theresa Putillion

### 1.     *Claim for Contractual Indemnification*

Safeco has brought a contractual indemnification claim against Ms. Putillion, asserting that she and the other defendants are jointly and severally liable under the Indemnification Agreement to reimburse Safeco for its losses.  In response, the defendant Ms. Putillion denies that it is her signature on the Indemnity Agreement.  (Resp. Def. Theresa Putillion to Pl.'s Mot. Summ. J. [Docket 36], at 1-2.)  She claims that she did not sign the Indemnity Agreement, and thus she is not bound by the agreement.  (*Id*. at 2.)

A court is required to enforce a clear, unambiguous contract and should not alter the intent of the parties as expressed in the writing.  *Cotiga Develop. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 492-93 (1963).  A court must enforce the parties' agreement as outlined in the contract.  *Lowe v. Albertzzie*, 205 W. Va. 47, 54 (1999).  However, a court may consider

extrinsic evidence when "the contract was executed due to fraud, mistake or material misrepresentations." *Id*. When a party has alleged fraud, mistake, or a material misrepresentation, a court may allow extrinsic evidence. *Id*.

Ms. Putillion denies that she signed the Indemnity Agreement and claims that she is not bound by its terms. Specifically, she has submitted an affidavit denying that she signed the Indemnity Agreement and asserting that she had not viewed the agreement before it was shown to her by Safeco's attorneys during her deposition. (Aff. Theresa Putillion [Docket 36-2].) However, the name "Theresa Putillion" appears on the Indemnity Agreement. Thus, there is a genuine issue of material fact as to whether Ms. Putillion signed the Indemnity Agreement. Accordingly, the plaintiff's Motion for Summary Judgment as to Count I against Ms. Putillion is **DENIED**.

B.      *Claims for Common Law Indemnification*

The plaintiff has also brought a claim against the defendants, including Ms. Putillion, for common law indemnification. As discussed above, a principal is implicitly liable to reimburse a surety for expenses incurred as a result of a bond issued to the principal. *Fid. & Deposit Co. of Md.* 722 F.2d at 1163. The principal in this case is Mountaineer; Ms. Putillion is not the principal. (Resp. Def. Theresa Putillion to Pl.'s Mot. Summ. J. [Docket 36], at 1.) Because Ms. Putillion is not the principal for the performance bonds issued by Safeco, she is not required under the common law to reimburse Safeco for its losses. Accordingly, the plaintiff's Motion for Summary Judgment as to Count II of the Complaint is **DENIED**.

C.      *Claim for Specific Performance*

- 21 -

The plaintiff brought a claim for specific performance of the Indemnity Agreement against all defendants.  As discussed above, a genuine issue of material fact exists as to whether Ms. Putillion signed the Indemnity Agreement.  Thus, the plaintiff's Motion for Summary Judgment as to Count III of the Complaint is **DENIED**.

       D.    *Claim for* Quia Timet

Finally, the plaintiff brought a claim against the defendants asserting its right to *quia timet*.  Like common law indemnification, *quia timet* is a right of the surety against the principal.  *Neal*, 26 S.E. at 173.  The Indemnification Agreement identifies Mountaineer as the principal in the performance bonds issued by Safeco.  Thus, Safeco does not possess a right to *quia timet* against Ms. Putillion.  Accordingly, the plaintiff's Motion for Summary Judgment as to Count IV of the Complaint is **DENIED**.

**VI.**    **Conclusion**

For the reasons discussed above, the plaintiff's Motion for Summary Judgment as to Counterclaim is **GRANTED**.  The plaintiff's Motion for Summary Judgment as to Counts I-IV of the Complaint is **GRANTED in part** as to Count I for Mountaineer Grading Co., Inc. and MG Management, Inc. and **DENIED in part** as to Counts II-IV for Mountaineer Grading Co., Inc. and MG Management, Inc.  The plaintiff's Motion for Summary Judgment as to Counts I-IV against Ms. Putillion is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      March 9, 2012

- 22 -

Joseph R. Goodwin, Chief Judge