IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SAFECO INSURANCE COMPANY
OF AMERICA,

                Plaintiff,

v.                                CIVIL ACTION NO. 2:10-cv-01301

MOUNTAINEER GRADING CO., et al.,

                Defendants.

**MEMORANDUM OPINION & ORDER**

On May 22, 2012, the court conducted a bench trial in this action. Having considered the pleadings, the testimony of witnesses, and the documents in evidence, the court makes its Findings of Fact and Conclusions of Law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

**I.**    **Findings of Fact**

The following discussion represents the court's findings of fact as to whether Ms. Putillion signed the Indemnity Agreement. Each finding is made by a preponderance of the evidence.

    A.    *Indemnity Agreement*

At the beginning of the trial, both parties stipulated that Mountaineer Grading and Mr. Putillion executed the General Agreement of Indemnity for Contractors on September 22, 2008. (Pl.'s Ex. 1 [Docket 58-1].) In the Indemnity Agreement, the signatories agreed that in the event

of a default, they would pay the surety "[a]ll loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees . . . incurred by Surety by reason of having executed any bond . . . ." (*Id.* at 2.) The parties stipulated that this document was authentic.

    B.    *Mr. Cooper's Testimony*

Mr. Cooper was a witness at the trial. He testified that he was a notary and the vice president of operations at Mountaineer Grading. Mr. Cooper's signature is on the Indemnity Agreement under the "Individual Acknowledgment" section. During the trial, he acknowledged that it was his signature on the Indemnity Agreement but that he had no specific recollection of notarizing the document for Ms. Putillion. Mr. Cooper testified that it was his general practice to have the person whose signature he was notarizing sign the document in his presence. Thus, the court **FINDS** that Mr. Cooper understands the general standards of a notary. The court also **FINDS** that Mr. Cooper's statement that he has no recollection of the Indemnity Agreement or whether he followed those standards regarding this particular document to be credible.

Mr. Cooper also testified to the relationship between Mr. and Ms. Putillion at the time the Indemnity Agreement was executed. Specifically, he testified that he was aware that the Putillions were having marital problems and that the couple was going through a separation and divorce proceedings from 2006 to 2008. He also testified that as a result of the divorce proceedings, Ms. Putillion would rarely come into the office.

The court **FINDS** that Mr. Cooper's testimony was credible.

    C.    *Ms. Putillion's Testimony*

Ms. Putillion also testified at the trial. Ms. Putillion was and is married to Mr. Putillion and they have three children together. She testified that she was not familiar with Mountaineer

Grading's or MG Management's business or operations and that she was not involved with either of those companies. She also testified that she had instituted a divorce proceeding and that she was separated from Mr. Putillion from November 2006 until August 2008. As a result of filing the divorce action, Ms. Putillion testified that she did not go into the office during this time and that it would have been a "very unusual" event for her to go to her husband's office. She specifically testified that going into the office would have been something that she remembered. The court **FINDS** that the Indemnity Agreement was signed during a period in which Mr. and Ms. Putillion were separated. The court also **FINDS** that Ms. Putillion was not involved in the management of Mr. Putillion's businesses.

Ms. Putillion denied signing the Indemnity Agreement. She also said that she never authorized someone to sign her name to the Indemnity Agreement. Furthermore, Ms. Putillion testified that she did not know of the Indemnity Agreement's existence before the instant lawsuit and that she never would have agreed to become personally responsible for the business debts of her husband's companies. The court **FINDS** Ms. Putillion's testimony that she did not know of or sign the Indemnity Agreement to be unequivocal and credible.

The court **FINDS** that Ms. Putillion's entire testimony was highly credible. She appeared to be sincere, forthright, and candid and her testimony was not contradicted by Mr. Cooper's testimony.

      D.    *Handwriting Exemplar*

This court had Ms. Putillion sign her signature on a blank piece of paper three times for the purpose of comparing those signatures to the signature on the Indemnity Agreement. The

court compared the signatures that Ms. Putillion made in court to the signature on the Indemnity Agreement.

In comparing the signatures, the court **FINDS** that there are substantial differences between the signatures in the exemplar and the signature on the Indemnity Agreement. But the court affords little weight to the writing exemplar.

### III.  Conclusions of Law

A signature that has been certified by a certificate of acknowledgment is presumed to be valid. *See Evans v. Bottomlee*, 150 W. Va. 609, 617 (1966); *Roberts v. Huntington Dev. & Gas Co.*, 109 S.E. 348, 350 (W. Va. 1921). To impeach a certificate of acknowledgment by a notary, "the proof must be clear, cogent, satisfactory and convincing beyond reasonable doubt." *Roberts*, 109 S.E. at 350; *Evans*, 150 W. Va. at 617.

In this case, the court **CONCLUDES** that Indemnity Agreement's certificate of acknowledgment has been impeached by evidence that is "clear, cogent, satisfactory and convincing beyond doubt." *See Roberts*, 109 S.E. at 350. First, Mr. and Ms. Putillion were separated at the time that the plaintiffs claim that she signed the Indemnity Agreement. Second, Mr. Cooper has no recollection of Ms. Putillion signing the agreement and he acknowledges that it would have been an unusual event if she had come into the office because of the separation. Third, Ms. Putillion was not involved in the management of Mountaineer Grading or MG Management and she did not know details about the businesses. Fourth, the court credits Ms. Putillion's testimony that she did not sign the document, that she did not know of the document's existence until the instant suit, and that she would not have agreed to become personally liable for the business obligations of Mr. Putillion's companies. Fifth, the court notes that neither Mr.

Putillion nor Ms. Jarrett, both of whom signed the Indemnity Agreement, were called to testify at trial regarding the signatures on the Indemnity Agreement.  Sixth, although the court does not give it much weight, there were substantial differences between Ms. Putillion's signatures on the handwriting exemplar and the signature on the Indemnity Agreement.

In sum, the court **CONCLUDES** beyond that Ms. Putillion has demonstrated beyond a reasonable doubt that she did not sign the indemnity agreement.

### IV. Common Law Claims Against Ms. Putillion and the Corporate Defendants

The plaintiff's common law claims against Ms. Putillion and the corporate defendants Mountaineer Grading and MG Management remain.  Ms. Putillion and the corporate defendants moved for summary judgment as to these claims.  The plaintiff did not oppose the motion.  The court **GRANTS** Ms. Putillion's and the corporate defendants' Motion for Summary Judgment as to the common law claims.

### V. Judgment

For the foregoing reasons, the court hereby **ORDERS** that **judgment be entered** in favor of the defendant Theresa Putillion on the contractual obligation claim.  The court further **ORDERS** that **judgment be entered** in favor of Ms. Putillion, MG Management, and Mountaineer Grading as to the common law claims.  The case remains stayed as to the defendant Mr. Putillion pursuant to this court's February 15, 2012 order [Docket 43].

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     July 27, 2012

Joseph R. Goodwin, Chief Judge